IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANIE LYNN YEARLEY,

    Plaintiff,

v.                                                            No. 1:23-cv-0922 DLM/KK

LOVES COUNTRY STORE #285,
BILL MORRISON, and DEREK RUSINEK,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Compel Arbitration and Stay Further Proceedings. (Doc. 18.) Defendants argue that Plaintiff Janie Lynn Yearley received and agreed to Defendant Love's mutual dispute resolution policy and that her claims in this lawsuit fall within the scope of the policy. Plaintiff did not file a response to the Motion, and although that constitutes consent to grant the Motion under Local Rule 7.1(b), because Plaintiff is pro se, the Court will nevertheless analyze the Motion on the merits. And, having considered the record, submissions of counsel, and relevant law, the Court finds that the parties entered into an enforceable arbitration agreement. Accordingly, the Court will grant the motion and stay the matter to allow the parties to arbitrate the dispute.

    **I.**     **Factual Background**

Yearley's claims arise out of her former employment with Love's. (Doc. 1 at 2–4.) Yearley claims she was hired in 2015, and in September 2021, she informed her employer she had a disability for which she required accommodations. (*Id.* at 2.) She alleges that she did not receive the accommodation she requested, which made her existing disability worse and caused her to

develop a new disability. (*Id.*) Yearley further claims that in October 2021, she informed her supervisor that a "certain task was in contradiction of the accommodation" her doctor had requested. (*Id.*) Her supervisor allegedly expressed exasperation, said "he was done with [her]," and said "bye," which she took as a termination of her employment. (*Id.*) Yearley claims that after leaving the store, she was immediately taken off the schedule for future shifts and was retaliated against in her attempts to obtain unemployment benefits because the supervisor did not cooperate in the administrative process. (*Id.*) She seeks relief under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, and for damages resulting from her supervisor's alleged retaliation. (*Id.* at 5.) Yearley also alleges that her supervisor falsified documents, but it is unclear whether or how she brings that as a claim. (*See id.* at 3.)

During Yearley's employment at Loves, she received and agreed to Love's policy on dispute resolution and to its mutual dispute resolution agreement. (*See* Docs. 18 at 2; 18-A 16 (affidavit of Keith Varner, Manager of Learning Development that Yearly agreed to both on March 23, 2021).) The policy provides a three-step dispute resolution process: raising the issue to a direct supervisor or, if not practical, higher up the chain of command; mediation; and, if mediation is denied, arbitration. (Doc. 18-A-1.) The arbitration agreement states that if the "Employee accepts [the agreement,] . . . both Employee and the Company will be bound by its terms." Doc. 18-A-2.) The agreement further states that the "Employee and the Company agree that any controversy, dispute, or claim arising out of or relating to Employee's employment . . . shall be settled exclusively by binding arbitration rather than in court." (*Id.*) Covered Claims under the agreement include, but are not limited to, claims for unlawful retaliation, claims under the Americans with Disabilities Act, and Title VII claims. (*Id.*) The agreement lays out the procedure for requesting

arbitration and the rules by which arbitration is conducted. (Doc. 18-A-2.) The agreement concludes with the following text before the signature line:

> **THIS CONTRACT IS A BINDING ARBITRATION AGREEMENT WHICH MAY BE ENFORCED BY THE PARTIES.**
>
> **BY SIGNING BELOW (OR ACCEPTING OR CONTINUING EMPLOYMENT), I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ OR HAVE HAD THE OPPORTUNITY TO READ THIS ARBITRATION AGREEMENT AND I AGREE TO ITS TERMS. I UNDERSTAND THAT THIS ARBITRATION AGREEMENT REQUIRES THAT DISPUTES THAT INVOLVE THE MATTERS SUBJECT TO THE AGREEMENT BE SUBMITTED TO ARBITRATION PURSUANT TO THE ARBITRATION AGREEMENT RATHER THAN TO A JUDGE AND/OR JURY IN COURT.**

(*Id.* at 22.)

## II.    Legal Standard

To determine whether to enforce an arbitration agreement, courts must first determine whether the parties intended to arbitrate, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), and to do so, they apply state contract principles, *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014). "Under New Mexico law, '[a] legally enforceable contract requires evidence supporting the existence of an offer, an acceptance, consideration, and mutual assent.'" *Parrish v. Valero Retail Holdings, Inc.*, 727 F. Supp. 2d 1266, 1274 (D.N.M. July 15, 2010) (quoting *Piano v. Premier Distrib. Co.*, 107 P.3d 11, 14 (N.M. 2004)). The Tenth Circuit has held that, under New Mexico law, "a reciprocal agreement to arbitrate can provide the requisite consideration so long as the employer does not retain the unilateral authority to terminate or modify the arbitration agreement once the employee's claim has accrued." *Id.* at 1280 (quoting *Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 F. App'x 812, 819 (10th Cir. 2008)). "[A] party who manifests assent to a contract's terms is bound by them, and failure to read the terms is no excuse." *Clements v. Alto Tr. Co.*, No. CIV 22-

00062 RB/SCY, 2023 WL 5002472, at *9 (D.N.M. Aug. 4, 2023) (quoting *Hancock v. Am. Tel. and Tel. Co., Inc.*, 701 F.3d 1248, 1256 (10th Cir. 2012)) (subsequent citation omitted).

Second, if the parties formed an enforceable agreement to arbitrate, a court must determine whether their dispute falls within the scope of the agreement. *See Clements*, 2023 WL 5002472, at *4. The Federal Arbitration Act (FAA) permits the enforcement of arbitration agreements involving disputes between an employee and an employer because they involve interstate commerce. *See Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1145 n.6 (10th Cir. 2007) ("[T]the Supreme Court has determined that the FAA applies to agreements to arbitrate employment disputes . . . .") (discussing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)).

The standard for evaluating a motion to compel arbitration is similar to that for summary judgment.

> [T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith.

*Clements*, 2023 WL 5002472, at *4 (quoting *Waltrip v. Pilot Travel Ctrs.*, Civ. No. 21-642 GBW/KRS, 2022 WL 2192892, at *2 (D.N.M. June 17, 2022)). A court must view the evidence in favor of the non-moving party to determine whether a genuine issue of material fact exists, and if there is no issue of fact, the court shall resolve the inquiry as a matter of law. *See id.* (quotations omitted). A party may file a motion to enforce an arbitration agreement and stay the matter pending arbitration, and if the court determines the agreement is enforceable, it shall stay the matter. *See* 9 U.S.C. § 3–4.

### III.  Analysis

The Court first considers whether the parties intended to arbitrate any dispute that might arise. Defendants presented two documents for the Court to consider in making this determination. The first is Love's policy on handling disputes. (Doc. 18-A.) The policy expressly states that arbitration is the third and final step of the dispute resolution process, and as Manager of Learning Development Varner averred, Yearley selected the "Agree" option after accessing the policy online. (Docs. 18-A; 18-A-1) The second is the arbitration agreement itself. (Doc. 18-A-2.) The agreement states that its terms intend to bind the parties to resolve any dispute through arbitration in the section of the agreement titled "II. Covered Claims," which states that "Employee and Company agree that any controversy . . . shall be settled exclusively by binding arbitration . . . ." (*Id.*) In bold, capital letters, just above the signature line, the agreement also states that signing it or accepting or continuing employment demonstrates the understanding that "**THIS ARBITRATION AGREEMENT REQUIRES THAT DISPUTES** . . . **BE SUBMITTED TO ARBITRATION** . . . ." (*Id.*)  Most importantly, however, the agreement specifies that if the "Employee accepts [the agreement,] . . . both Employee and the Company will be bound by its terms. (*Id.*)

Based on the policy and the arbitration agreement, the Court finds that the parties demonstrated an intent to arbitrate. The policy clearly lays out the three-step process for resolving disputes (Doc. 18-A-1), and the arbitration agreement itself very conspicuously emphasizes that agreeing to it demonstrates an agreement to arbitrating any dispute (Doc. 18-A-2). The evidence submitted supports a finding that Yearley agreed to both the policy and the arbitration agreement. (Doc. 18-A.) Additionally, the agreement states that the company intends to be bound by its terms as well (Doc. 18-A-2), and upon careful review of the agreement, the Court finds no provision

granting Love's unilateral authority to terminate or modify the agreement. *See Parrish*, 727 F. Supp. 2d at 1280 (holding that a mutual agreement to arbitrate provides the requisite consideration to assent to an arbitration agreement so long as the employer cannot unilaterally change or terminate the agreement).

Having found that the parties entered into an enforceable agreement to arbitrate, the Court now considers whether the dispute falls within the scope of the agreement. Yearly brings claims for unlawful retaliation, ADA, and Title VII, all of which are explicitly covered by the arbitration agreement.[1] (Docs. 1 at 5; 18 at 19.) Accordingly, the dispute falls within the scope of the arbitration agreement.

## IV.     Conclusion

The Court finds that the parties demonstrated an intent to arbitrate any dispute that might arise between them. Yearley accessed and agreed to the dispute resolution policy and the arbitration agreement. Further, the arbitration agreement expressly stated it would require arbitration of any dispute, and Loves did not retain the unilateral authority to modify or terminate the agreement. Lastly, the agreement lists as covered claims the claims that Yearley brings, and as an employment dispute, it is enforceable under the FAA. The Court additionally finds that the parties intended to arbitrate and the dispute is covered by the arbitration agreement, so it will grant Defendants' Motion to compel arbitration. Further, because the Court has ordered the agreement be enforced, it must stay the matter pending arbitration. *See* 9 U.S.C. § 3 ("[T]he Court . . . upon

---

[1] The Court notes, as Defendant highlights, that Yearley also brings a claim that her supervisor falsified documents without specifying to which cause of action it relates. (*See* Doc. 18 at 1 n.1 (citing Doc. 1 at 2–4).) To the extent Yearley brings any claim related to falsified documents, the Court agrees with Defendants that it falls within the scope of the agreement under the provision covering "claims for violation of any federal, state, or other government law, statute, regulation, or ordinance . . . ." (*Id.* at 13; *Id.* at 19.) Accordingly, any claim related to falsified documents would not alter the Court's analysis.

being satisfied that the issue . . . is referrable to arbitration . . . *shall* on application of one of the parties stay the trial of the action . . . .") (emphasis added).

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Arbitration and Stay Further Proceedings (Doc. 18) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **STAYED**.

**IT IS FURTHER ORDERED** that every 90 days Defendants shall file a status report apprising the Court of the status of arbitration or file an appropriate motion and submit a proposed order granting the motion to martinezproposedtext@nmd.uscourts.gov.

**IT IS SO ORDERED.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE